IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 8 2015

CLERK, U.S. DISTRICT COURT
By _____
              Deputy
```

| | | |
|---|---|---|
| HERMAN LEE HALL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:13-CV-469-A |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Herman Lee Hall, a state prisoner currently incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

## I.  Factual and Procedural History

In 2009, in the 213th District Court of Tarrant County, Texas, petitioner was charged by indictment with possession of a controlled substance, namely cocaine, of four grams or more but

less than two-hundred grams.   Adm. R., Appl. for Writ of Habeas

Corpus, No. WR-28,334-08, 25, ECF 13-23.   The indictment also

included a habitual-offender notice alleging prior felony

convictions for sexual assault and robbery.   *Id.*   On January 29,

2010, petitioner's then appointed counsel, Lisa Hoobler, moved

for a competency hearing, which was granted by the trial court on

February 1, 2010.   *Id.*, WR-28,334-12, 29-30, ECF No. 13-31.   A

competency evaluation was performed by Dr. Barry Norman, who

found petitioner competent to stand trial.   *Id.* at 31-36.   On

January 28, 2011, petitioner's subsequently appointed counsel,

Daniel C. Hernandez, moved for a competency examination, which

was granted by the trial court on the same date.   *Id.*, 37-38.   A

competency evaluation was performed by Dr. Kelly R. Goodness, who

opined that petitioner was incompetent to proceed.   *Id.*, 39-45.

Based on Dr. Goodness's evaluation, the  parties agreed and the

trial court entered on March 8, 2011, an "Agreed Judgment of

Incompetency to Stand Trial."   *Id.* at 46-48.   Petitioner was

transferred to a mental health facility, where he was evaluated

over the next six months on five different occasions.   On October

4, 2011, petitioner's mental health team filed a "Competency to

Stand Trial Evaluation" indicating that petitioner had regained

competency to stand trial, and the trial court entered an order

of competency the next day on October 5, 2011. *Id.* at 50-63.
Thereafter, on October 25, 2011, pursuant to a plea agreement,
petitioner entered a guilty plea to the primary offense in
exchange for the state's waiver of the habitual-offender notice
and a recommendation of a 15-year sentence, and the trial court
sentenced petitioner accordingly.   *Id.*, Appl. for Writ of
Habeas Corpus, WR-28,334-08, 28-37, ECF No. 13-23.   Petitioner
appealed, but, having waived his right to appeal, the state
appellate court dismissed the appeal.  Pet. 3, ECF No. 1.
Petitioner did not file a petition for discretionary review in
the Texas Court of Criminal Appeals.  *Id.*  Petitioner has filed
four state habeas applications challenging his conviction.   The
first three were dismissed because petitioner's direct appeal was
still pending.  Adm. R., Appls. for Writ of Habeas Corpus, Nos.
WR-28,334-08, -09, -10, and -12, ECF Nos. 13-23, 13-24 & 13-25.
The fourth, raising one or more of the claims presented in this
federal petition, was denied without written order by the Texas
Court of Criminal Appeals on the findings of the trial court.
*Id.*, No. WR-28,334-12, cover, ECF No. 13-31.

## II.  Issues

Generally, petitioner raises five grounds for relief:

(1)  His guilty plea was involuntarily entered;

3

    (2)   The search warrant is defective;
    (3)   The enhancement portion of the indictment is
           defective;
    (4)   The trial court failed to have a competency
           hearing; and
    (5)   He received ineffective assistance of counsel.

Pet. 6-7 & Insert, ECF No. 1.

### III.   Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the claims raised. Resp't's Ans. 4, ECF No. 16.  Nor does it appear that the petition is barred by limitations or subject to the successive-petition bar.  28 U.S.C. §§ 2254(b), (c) & 2244(b), (d).

### IV.   Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. §

4

2254(d).   A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).   A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings.  *Hill*, 210 F.3d at 485.   Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.   The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to the presumption of correctness. *Singleton v. Johnson*, 178 F.3d

381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472
(Tex. Crim. App. 1997). Under these circumstances, a federal
court may assume the state court applied correct standards of
federal law to the facts, unless there is evidence that an
incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293,
314 (1963)[1]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir.
2002).

### Petitioner's Claims

Petitioner claims his guilty plea was rendered involuntary
as a result of his mental incompetency and/or the erroneous
advice and ineffective assistance of trial counsel, Daniel C.
Hernandez. Pet. 6-7, Insert, ECF No. 1. According to
petitioner, counsel was ineffective and/or erroneously advised
him as follows (all spelling, punctuation and grammatical errors
are in the original),

> (1) Attorney had knowledge that Applicant (Hall) has
> previously been found incompetent to stand trial.
> Attorney knew Hall was being medicated for mental
> illness. Attorney knew Hall had just come from a
> Mental hospital. Attorney knew that Hall did not know
> what happen on the day of his arrest. Attorney fail to
> request for competency hearing. (2) Attorney fail to
> challenge the indictment + evidence use for enhancement

---

[1]The standards of *Townsend v. Sain* have been incorporated
into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330
n.2 (5th Cir. 1981).

6

was defective and met double jeopardy.  The robbery
portion of the enhancement had already been used for an
enhancement, therefore the robbery portion and/or
indictment had been used twice for enhancement.  The
robbery indictment had been used twice for enhancement.
The robbery indictment itself is defective. . . .  And
the other enhancement paragraph, the evidence was
destroyed and tampered with in order to maintain a
conviction.  (3) Attorney fail to challenge search
warrant when search warrant had another person's name
and address on it that was marked out and Hall's name
and address wrote in and no judge's signature.  (4)
Attorney told Hall that there was nothing wrong with
the indictment nor the search warrant.  Also he promise
that if Hall goes to jury trial that he would get way
more than 15 years and this is the last time to take
the 15 years before going to trial.  Attorney told Hall
that he could not get another state attorney.  (5) No
challenge of evidence of search warrant.  (6) No motion
to suppress.

*Id.* at Insert.

In an affidavit filed in the state habeas proceedings,

counsel responded to petitioner's allegations in relevant part as

follows:

        . . .

    2.   I was appointed by Judge Louis Sturns on or about
    August 1, 2010 and appeared on Mr. Hall's behalf in
    Court.  Judge Sturns appointed me to replace his prior
    attorney for unknown reasons.  Mr. Hall's case was
    already on the Court's trial docket at the time I was
    appointed.  Mr. Hall was charged with Possession of a
    Controlled Substance 4-200 grams, enhanced with prior
    felony convictions to a habitual offender.

    3.   I appeared on behalf of Mr. Hall on at least eight
    occasions.  Mr. Hall and the State informed me that
    they wished to meet together so he could provide

important information on other unrelated cases in exchange for leniency on his current charge. Based on this conversation with Mr. Hall, I was able to delay the trial and set up a meeting with both prosecutors and detectives who were investigating and preparing a murder trial.

4.   Mr. Hall was informed that no offers were to be made until after he was interviewed by the prosecutors to determine the value of his information. Mr. Hall was agreeable and wanted to pursue this avenue. He did not mention any desire to go to trial. Again, Mr. Hall was originally charged by indictment with a minimum sentence of twenty-five (25) years.

5.   On October 12, 2010, Mr. Hall and I met with the State's prosecutors to discuss his knowledge of facts relating to a murder charge where Mr. Hall could be a potential witness. We met with the State on one other occasion prior to that murder case going to trial. Ultimately, Mr. Hall was not called as a witness.

6.   Other than appearing for his regularly scheduled pre-trial appearances, I maintained contact with Mr. Hall. I visited him in jail on at least one occasion. He also wrote me regularly and I responded when necessary.

7.   During, and up to the trial date, I did the following in preparation for trial: reviewed all police reports, clinical records, investigator reports; prepared a voir dire; prepared questions for all witnesses for direct and cross examination; prepared trial notebooks; researched relevant law; and brought in co-counsel to assist with trial matters in the event we ultimately would try this case.

8.   In exchange for Mr. Hall's cooperation, the State waived the enhancement paragraph and allowed him to accept a plea based solely on the drug charge.

9.   On January 24, 2011, we were given a fifteen (15) year offer, waiving the enhancement paragraph charging

8

him with a habitual offender count.  At that time, Mr.
Hall requested he be given a psychological evaluation
to determine his competency.  Although I believed Mr.
Hall to be competent and have a complete understanding
of the nature of his charge, he simply informed, "Get
me evaluated, I'll take care of it."  In an abundance
of caution, I requested Mr. Hall be evaluated based on
the fact that he had been previously evaluated and that
his comments suggested I needed to assure he was
competent to proceed to either trial or a plea.  On
January 24, 2011, I filed a motion for competency.
Judge Sturns appointed Dr. Kelly Goodness.  Dr.
Goodness evaluated Mr. Hall on January 31, 2011 and
found him incompetent to proceed with likelihood that
he would attain competence within the foreseeable
future.  He was sent to the Montgomery Mental Health
Facility.  In September of 2011, Dr.'s Siji Lizza John
and Walter Quijano signed and submitted a report
claiming Mr. Hall was competent to stand trial.

10.  On October 20, 2011, we were again offered fifteen
years (15) in exchange for his plea of guilty.  We
discussed the options of trial versus a plea.  Mr. Hall
fully understood that the risk of trial meant that if
he was found guilty, punishment would start at twenty-
five (25) years.  Mr. Hall also fully understood that
there was substantial risk if he were to testify on his
own behalf given his criminal history.

11.  On October 25, 2011, Mr. Hall was brought to court
to decide if he would ultimately accept or reject the
State's offer.  His main reluctance was that given his
history, he was afraid TDC would make him serve the
entirety of the sentence rather than allow him to be
released on parole at any time.  Mr. Hall chose to
accept the State's fifteen (15) year offer in lieu of
trial.

12.  Mr. Hall was very clear in his understanding of
what was happening.  It was at that time he explained
his reservations on the number of years versus how long
he'd have to serve.  Mr. Hall gave no indication of any
incompetence.  He was able to discuss the facts of his

9

case clearly and recalled, in detail, those things
consistent and inconsistent with the police report.
However, he gave no indication that he was not guilty
of what he was charged.   Furthermore, he knew he was
found with the drugs and understood that his prior
record could and would be used against him in the
punishment phase of the trial were he to be found
guilty by the jury.   He specifically chose to forgo any
further motions or hearings, including trial, and
accept the State's offer.

13.   In specifically addressing his points in his writ,
Mr. Hall first alleges that I did not look into his
mental stability prior to his plea.   The record clearly
demonstrates that I did file a motion to have him
evaluated, he was found incompetent, but then later was
found competent to return and stand trial.   At that
time we met for his plea, Mr. Hall gave no indication
that he did not understand the charge, the proceedings,
or his decisions.   Furthermore, given that the previous
time he was found incompetent based on my motion was
based on his request, it appears that he may have
purposely stopped taking his medications in order to
avoid further prosecution.

14.   His second point alleges I failed to challenge the
indictment.   However, he complains that the enhancement
paragraph was defective.   Based on my plea
negotiations, that enhancement paragraph was waived by
the State.

15.   His third point was that I failed to challenge the
warrant.   Any challenges I may have made to the warrant
were waived when he chose to plead guilty voluntarily.
Had the case proceeded to trial, I may have been able
to challenge these different issues via a motion to
suppress or a directed verdict.   However, Mr. Hall
indicated from the onset of my appointment to his case
that he wanted to negotiate a plea based on his
cooperation with the State by providing information on
a murder case unrelated to his offense.

16.   Mr. Hall's fourth point alleges that I made some

10

sort of promise and that I represented he could not get another attorney. At no time was any promise made or guarantee of any result regarding a trial or plea negotiations. I explained to Mr. Hall what the risks were in going forward or taking a plea. More importantly, I pointed out that if he were found guilty, punishment could be no lower than twenty-five years. In addition, based on his criminal history, I advised him that there was a higher risk that his punishment could be well above the minimum of twenty five and could be as high as life, depending on the jury's deliberations. He also argues that I told him he could not get another attorney. Mr. Hall never complained of my services. In fact, I believed we had a very cordial attorney-client relationship. Mr. Hall was always very soft-spoken and realistic of the potential outcomes. It was clear Mr. Hall did not like the State's final offer after his cooperation, but he did not complain of my services to get to where the offer was. At no time did Mr. Hall ever request I withdraw from his case. At no time did Mr. Hall complain to Judge Sturns about my services. At the time of the plea, in fact, Judge Sturns asked Mr. Hall if he was satisfied with my services and Mr. Hall replied, "yes." He further complained that there were no challenges to the evidence, however, without a trial, any evidence obtained and any challenges to testimony were waived upon his voluntary plea of guilty.

Adm. R., Writ of Habeas Corpus, WR-28,334-12, 74-81, ECF No. 13-31.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI. To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered unknowing or involuntary by showing that (1) counsel's

11

representation fell below an objective standard of
reasonableness, and (2) there is a reasonable probability that,
but for counsel's deficient performance, he would not have
pleaded guilty and would have insisted on going to trial. *Hill
v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Smith v. Estelle*, 711
F.2d 677, 682 (5th Cir. 1983); *see also Strickland v. Washington*,
466 U.S. 668, 687 (1984).   In assessing the reasonableness of
counsel's representation, "counsel should be 'strongly presumed
to have rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional judgment.'"
*Cullen v. Pinholster,* — U.S. —, 131 S. Ct. 1388, 1403 (2011)
(quoting *Strickland,* 466 U.S. at 690).

However, by entering a knowing, intelligent and voluntary
guilty plea, a defendant waives all nonjurisdictional defects in
the proceedings preceding the plea, including all claims of
ineffective assistance of counsel that do not attack the
voluntariness of the guilty plea.   *Smith,* 711 F.2d at 682;
*Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. 1981).   A
guilty plea is knowing, voluntary and intelligent if done with
sufficient awareness of the relevant circumstances and likely
consequences surrounding the plea.   *Brady v. United States*, 397
U.S. 742, 748 (1970).   If a challenged guilty plea is knowing,

12

voluntary and intelligent, it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).

Although there is no reporter's record of the plea proceedings in this case, the state habeas judge, who also presided at petitioner's trial, entered findings consistent with counsel's affidavit and the documentary record. Specifically, the court found that the trial court fully admonished petitioner regarding the waiver of his rights and consequences of his plea, and that petitioner signed that he had read and understood the written plea admonishments, that he was mentally competent, that his plea was knowingly, freely and voluntarily entered, that he had not been coerced, forced or improperly persuaded to enter his plea, and that he was satisfied with his counsel's representation. Findings of Fact 96, ECF No. 13-31. The court also found that petitioner presented no evidence suggesting that he would have rationally proceeded to trial or that the outcome of his prosecution would have been different with other counsel. *Id.* at 97. Based on its findings, the court concluded that petitioner had given counsel no indication that he was incompetent to stand trial, that petitioner was fully apprised of the reasons for entering a guilty plea and voluntarily agreed to enter that plea, that petitioner's guilty plea was freely and

voluntarily entered and based on proper and adequate advice of counsel, and that petitioner waived the remainder of his claims when he chose to enter a guilty plea.   *Id.* at 96-98.

The state court's adjudication of the claims is not contrary to, or involve an unreasonable application of, *Strickland*, or other relevant Supreme Court law.   Petitioner's representations during the plea proceedings "carry a strong presumption of verity," and the official records, signed by petitioner, his counsel and the state trial judge are entitled to a presumption of regularity and are accorded great evidentiary value. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974).   Counsel took adequate measures to ensure petitioner was competent to enter his plea, and the record supports counsel's assertion that petitioner sought a plea bargain in exchange for information regarding a separate criminal case from the outset of counsel's representation.

Petitioner also claims the trial court should have held a competency hearing.   Under state law, a defendant is presumed to be competent.   TEX. CODE CRIM. PROC. ANN. art. 46B.003, § (b) (West 2006).   However, if evidence suggesting the defendant may be incompetent comes to the attention of the trial court, the court

14

must hold a competency hearing.  *Id.* art. 46B.004, § (b).  The
state habeas court found that the trial court considered
petitioner's competency and followed all of the state-law
requirements for evaluating a defendant's competency.  Thus, the
court concluded that the trial court's actions in having
petitioner's competency assessed and in directing petitioner to a
treatment facility until he was adjudged competent met those
requirements.  Adm. R., Appl. for Writ of Habeas Corpus, WR-
28,334-12, 104-05, ECF No. 13-31.

The state court's adjudication of the claim is not contrary
to, or involve an unreasonable application of, Supreme Court
precedent.  Under federal constitutional law, the conviction of a
legally incompetent defendant violates due process.  *Pate v.
Robinson,* 383 U.S. 375, 378 (1966); *Mata v. Johnson,* 210 F.3d
324, 329 (5th Cir. 2000).  The federal constitutional standard
for competency to stand trial is whether the defendant has
"sufficient present ability to consult with his lawyer with a
reasonable degree of rational understanding—and whether he has a
rational as well as factual understanding of the proceedings
against him."  *Dusky v. United States,* 362 U.S. 402, 402 (1960);
*Bouchillon v. Collins,* 907 F.2d 589, 592 (5th Cir. 1990).  A
trial court must hold a competency hearing when there is evidence

15

before the court that objectively creates a bona fide question as to whether the defendant is competent to stand trial. *Pate v. Robinson,* 383 U.S. 375, 378 (1966); *Lokos v. Capps,* 625 F.2d 1258, 1261 (5th Cir. 1980). The competency standard in guilty plea cases is identical to the competency standard to stand trial. *Godinez v. Moran,* 509 U.S. 389, 398-99 (1993). A state court's competency finding is presumed correct, and a petitioner bears a heavy burden in contesting his competency during federal collateral review. *DeVille v. Whitley,* 21 F.3d 654, 656 (5th Cir. 1994). The question is did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense. *Medina v. California,* 505 U.S. 437, 448 (1992); *Lokos v. Capps,* 625 F.2d 1258, 1261 (5th Cir. 1980).

The record reflects that based on the trial court's and counsel's interaction with petitioner, both the court and counsel were clearly under the opinion that petitioner was competent to stand trial, and there is nothing in the record to suggest that the court or counsel should have been aware that petitioner

16

lacked the ability at the time he entered his plea to discuss the case with counsel and to understand the proceedings against him. On the contrary, the record indicates that petitioner, having been found competent by a mental health team in September 2011, was capable of understanding the charges against him and of consulting with his attorney at the time of the plea proceedings. Petitioner has failed to demonstrate objective facts known to the court or counsel that would have signaled a bona fide doubt as to his competency.  The mere presence of a mental defect does not demonstrate mental incompetence to stand trial. *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir. 1976).  Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value.  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).  There is no evidence from an expert stating that petitioner was incompetent to stand trial or that he was so mentally incompetent as to be unable to understand the proceedings against him or consult his attorney. Based on petitioner's and his trial counsel's averments in the written admonishments and, based on petitioner's demeanor at the plea proceedings, the trial court apparently believed there was strong indicia of petitioner's competency.

17

In summary, petitioner has failed to overcome the presumption that he was competent to stand trial, that his plea was regular, and that counsel adequately performed his duties. Petitioner's claims after the fact, in and of themselves, are insufficient to rebut the presumption that he received effective assistance of counsel, the presumption that he was competent to enter his plea, the presumption his plea was knowing and voluntary, and the presumption of regularity of the state court records. *See United States v. Oliver*, 630 F.3d 397, 414 (5th Cir.), *cert. denied*, — U.S. —, 132 S. Ct. 758 (2011); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"). Because petitioner's guilty plea was knowingly, intelligently and voluntarily made, his ineffective assistance claims, which involve counsel's alleged acts or omissions preceding the plea, and not the voluntariness of the plea, are waived in addition to the remainder of his claims raised in this petition. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004); *United States v. Broce*, 488 U.S. 563, 573-74 (1989); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).

        For the reasons discussed herein,

        The court ORDERS the petition of petitioner for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,

denied.   It is further ORDERED that, for the reasons discussed

herein, a certificate of appealability be, and is hereby, denied.

SIGNED April _____, 2015.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE